IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL LENTINI,

    Plaintiff,

v.

KELLY SERVICES, INC.;
and CUTCO STORES, INC.,

    Defendants.

No. C17-03911 WHA

**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER TO EASTERN DISTRICT OF MICHIGAN AND DENYING AS MOOT MOTION FOR MORE DEFINITE STATEMENT**

## INTRODUCTION

In this wrongful termination and wage-and-hour-action, defendants move to transfer venue. Plaintiff opposes. For the reasons herein, defendants' motion is **GRANTED**.

## STATEMENT

In October 2014, plaintiff Michael Lentini signed an agreement as part of his employment application with defendant Kelly Services, Inc., a staffing agency, which provided that "any action arising out of [the] Application, Agreement, or relationship between [Lentini] and Kelly established herein shall be brought only in the State of Michigan Courts of appropriate venue, or the United States District Court sitting in Michigan, and [Lentini] consent[s] to and submit[s] [himself] to the jurisdiction of such courts" (Dkt. No. 14–1 ¶ 3, Exh. A). He was hired and began to work for Kelly in November 2014. Through Kelly, Lentini was assigned various jobs as a "demonstrator" which involved him going to stores such as Costco Wholesale and demonstrating the use of different appliances.

One company Kelly staffs for is Cutco Stores, Inc. In March 2016, Kelly referred Lentini to an assignment with Cutco, whereby Kelly remained his employer and Cutco assumed operational control over the assignment (Dkt No. 13 ¶ 10; Dkt. No. 20–1, Exh. D). In June 2016, a representative from Kelly terminated Lentini's employment over the telephone, allegedly for cursing at a Costco member, leaving a booth unattended, and impermissibly using a computer at a Costco location (Dkt. No. 13 ¶ 27).

Lentini initiated the instant action in the Superior Court of California, San Mateo County in June 2017. Defendants removed to the United States District Court for the Northern District of California. Following removal, Lentini filed his first amended complaint, alleging fourteen claims under the California Labor Code and Fair Labor Standards Act, including wrongful termination, retaliation, and failure to pay overtime wages (Dkt. No. 13).[1] Defendants move to transfer this action to the United States District Court for the Eastern District of Michigan under the terms of the forum-selection clause contained in the Kelly employment agreement signed by Lentini. Defendants also move for a more definite statement (Dkt. No. 24). This order follows full briefing and oral argument.

**ANALYSIS**

This order undertakes the necessary two-step analysis when a party moves to transfer venue pursuant to a forum-selection clause. It first considers whether the forum-selection clause at issue is valid, then turns to the public-interest factors under 28 U.S.C. 1404. Finally, this order addresses whether Cutco, a non-signatory to the agreement, can enforce the forum-selection clause against Lentini.

A forum-selection clause should be enforced unless the party challenging enforcement of such a provision can show it is unreasonable. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Both the Supreme Court and our court of appeals have construed this exception narrowly. A forum-selection clause may be found unreasonable under three circumstances: "(1) if the inclusion of the clause in the agreement is the product of fraud or

---

[1] Lentini previously filed a class action lawsuit against Kelly in the United States District Court, for the Central District of California, from which he subsequently voluntarily withdrew from (Case No. 2:16-cv-3898). He alleges his participation in that suit as the basis for his retaliation claim.

2

overreaching; (2) if the party wishing to repudiate the clause would be effectively deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which the suit is brought." *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (citing *M/S Bremen*, 407 U.S. at 12–18). The forum-selection clause in this action does not fall into any of these three categories, as now explained.

### 1. THE AGREEMENT WAS NOT THE PRODUCT OF FRAUD.

The provision in Lentini's employment agreement which mandates that all disputes be adjudicated in Michigan was not the product of fraud or overreaching. It was presented on the page of the agreement which he signed, under the heading, "Choice of Law and Jurisdiction and Forum," printed in reasonably large font (Dkt. No. 14–1, Exh. A). The forum-selection clause was neither hidden, nor was Lentini tricked into accepting it. Lentini claims that the forum-selection clause is unenforceable because it was not reasonably communicated to him. Specifically, he alleges that "defendants did not explain the significance of the forum-selection clause or make any attempt to draw Lentini's attention to it," and it was presented "in a take it or leave it package of documents that required only a mouse click for consent" (Dkt No. 20 at 6).

In *Moretti*, a forum-selection clause found to be reasonably communicated was contained in a "Terms of Use" hyperlink, to which customers consented to by checking the "Acceptance Box." *Moretti* held that it was sufficient to "require a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button as long as the user has access to the terms of service." *Moretti v. Hertz Corp.*, 2014 WL 1410432, at *2 (N.D. Cal. April 11, 2014) (Judge Jeffrey White). Here, Lentini had access to the electronic agreement containing the forum-selection clause as part of the package of application documents to which he consented by the click of a mouse after signing. The clause was thus reasonably communicated to Lentini.

Lentini argues that because defendants are multi-national corporations and he is an individual lacking in business acumen, the inclusion of the forum-selection clause was the product of overreaching (Dkt. No. 20 at 6). "A differential in power or education on a

3

non-negotiated contract will not vitiate a forum selection clause." *Murphy*, 362 F.3d at 1141 (citing *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595 (1991)). "To decline enforcement of a forum-selection clause merely on the showing of non-negotiability and power difference . . . would disrupt the settled expectations of the parties [] and would threaten the ability of employers to require that disputes with their employees normally be settled in their neighborhood, absent some other exigency." *Ibid*.

Neither *Murphy* nor *Spradlin* — decisions Lentini relies on — supports his position. In neither decision did the courts find the forum-selection clause was a product of fraud or overreaching, despite power disparities between the parties. The plaintiff in *Murphy*, for example, was a truck driver educated up to the tenth grade who was also presented a non-negotiable contract by a large company. *See Murphy,* 362 F.3d 1133. Our court of appeals nevertheless held that his assertions were predicated upon a claim of power differential and non-negotiability and were insufficient to overcome the strong presumption in favor of enforcing forum-selection clauses. *Id.* at 1141. In *Spradlin*, our court of appeals found there was no overreaching by a multinational military support company, despite the fact that its employment contract contained a Saudi Arabian forum-selection clause and it was "highly foreseeable that terminated American employees [would] be required to return to the United States and thus face considerable obstacles in bringing wrongful termination actions." *Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 869 (9th Cir. 1991).

Like the above cases, Lentini has failed to show fraud or overreaching despite there being a power differential between Lentini and Kelly. If Lentini was savvy enough to do the demonstrator job in dealing with the public, he was savvy enough to understand what he was signing, provided he cared enough to even glance over it. Here, the provision was not the product of fraud or overreaching.

### 2. NOT DEPRIVED OF DAY IN COURT.

Lentini has also failed to show that he would be deprived his day in court in Michigan.

In *Murphy*, our court of appeals held that "the combination of [plaintiff]'s alleged financial troubles and physical limitations would bar him from litigating his claim in

4

Wisconsin." *Id*. at 1143. "*Murphy* and the weight of persuasive authority from this district and other jurisdictions suggest that neither severe physical limitation nor economic hardship alone is generally enough." *Pratt v. Silversea Cruises, Ltd.*, 2005 WL 1656891, *3 (N.D. Cal. 2005) (Judge Susan Illston).

Here, Lentini alleges that he "lacks the financial ability to bear the costs and inconvenience of litigating in Michigan" and in his declaration provides details about his considerable financial difficulties (Dkt. No. 20 at 8; Dkt. No. 20–1 ¶¶ 27–35). He also declares, however, that he started a new, full-time job in June 2017, and in his first amended complaint does not allege any physical limitations that would prevent travel (Dkt. No. 20–1 ¶ 28; Dkt. No. 13 ¶¶ 10, 18, 19, 24, 25). Plainly, Lentini does not suffer from the "combination of . . . financial troubles and physical limitations" that can conspire to deprive a litigant of his day in court. *Murphy*, 362 F.3d at 1143.

Lentini claims that he will be unable to compel by subpoena or otherwise be unable to afford to bring to trial his "key witnesses," who allegedly reside in either "Northern California" or the "Western Region of the United States" (Dkt. No. 20 at 8). Lentini has named only one witness, however — an area manager for Cutco — and has failed to specifically allege where any of his potential witnesses are currently located (Dkt No. 20–2 at 2). Specific allegations are necessary to show that enforcement of a forum-selection clause would cause the sort of inconvenience which would deprive a party of their day in court. *Compare Spradlin*, 926 F.2d at 869 ("[plaintiff] has failed even to offer any specific allegations as to travel costs, availability of counsel[], location of witnesses, or his financial ability to bear such costs and inconvenience"), *with Petersen v. Boeing,* 715 F.3d 276, 281–82 (9th Cir. 2013) ("[plaintiff] plausibly alleged that the majority of his witnesses would be American. He named at least 16 such witnesses, including other [] employees who experienced similar conditions . . .").

Moreover, Lentini lives in Los Angeles County, hundreds of miles from San Francisco. Considering the likely cost of travel, meals, and lodging for him to appear in San Francisco, Lentini's argument that transfer to Michigan would prevent him from litigating his case is unconvincing. The incremental burden would only be slight.

5

### 3. THE FORUM-SELECTION CLAUSE DOES NOT CONTRAVENE PUBLIC POLICY.

Finally, transfer would not contravene any strong public policy of California. Absent a total foreclosure of remedy in the transferee forum, a forum-selection clause is only unreasonable when it contravenes a policy specifically related to venue. *See, e.g., Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497–498 (9th Cir. 2000).

Lentini argues that "the public policy in favor of full and prompt payment of an employee's earned wages is fundamental and well established" (Dkt. No. 20 at 9). This policy, however, is not specifically tethered to venue, and Lentini has made no showing that his rights will suffer from litigating his case in Michigan. Although Lentini would prefer to adjudicate his rights in a California forum, his preference is a private-interest factor which may not be considered under this factor. *See Monastiero v. appMobi, Inc.*, No. C 13-05711 SI. 2014 WL 1991564, at *6 (N.D. Cal. May 15, 2014). Therefore, Lentini's wage claims under the California Labor Code have no effect on the validity of the forum-selection clause.

Lentini similarly asserts that transfer should be denied because his "representative action under the Private Attorney's General Act . . . is not waivable" and it is "clearly not available under the laws of the State of Michigan" (Dkt. No. 20 at 9–11). Because the instant motion seeks a forum-selection rather than a choice-of-law determination, Lentini's burden is to show a fundamental public policy underlying California's Private Attorney's General Act that relates to venue. *See, e.g., East Bay Women's Health, Inc. v. gloStream, Inc.*, No. C 14-00712 WHA, 2014 WL 1618382, at *3 (N.D. Cal. April 21, 2014). He has failed to show his PAGA claim will be affected in any way by the venue it is litigated in. Therefore, transfer would not contravene any strong public policy of California.

Lentini further argues that "when a forum-selection clause is coupled with a choice-of-law clause, the Court may not consider the practical consequences of enforcing a forum selection clause that operates in tandem with a choice of law provision" (Dkt. No. 20 at 10). Lentini wrongly assumes, however, that the validity of a choice-of-law clause is at issue in the present motion. A forum-selection clause is "separate and distinct from choice of law provisions that are not before the court." *Besag v. Custom Decorators, Inc.*, 2009 U.S. Dist. LEXIS 13582, at *10

6

(N.D. Cal. Feb. 10, 2009) (Judge Jeffrey White). Moreover, Lentini's argument that Michigan's labor laws might prove less protective than California's is speculative and is beside the point since this motion deals with forum, not choice of law. It may yet be the case that a Michigan court will decide to apply the substantive law of California.

For the foregoing reasons, the forum-selection clause is not unreasonable and is therefore valid.

### 4. PUBLIC INTEREST FACTORS DO NOT PRECLUDE TRANSFER.

Where there is a valid forum-selection clause, courts may nevertheless weigh public-interest factors in deciding whether to transfer. *Atlantic Marine*, 134 S.Ct. at 582. "Because [public-interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Ibid*. Public interest factors include: "(1) the local interest in the lawsuit; (2) the court's familiarity with the governing law; (3) the burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to a particular forum." *Boston Telecomm'cns Group v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009).

There is nothing exceptional here which would warrant disrupting the legitimate expectations of the parties. Lentini concedes that the third and fourth factors are neutral. Only the first factor, California's interest in protecting the rights of its citizens, weighs against transfer. The second factor is neutral because a federal court in Michigan is capable of applying both federal and California law to Lentini's claims. Finally, as to the fifth factor, this dispute is not unrelated to Michigan. Kelly is headquartered in Troy, Michigan (Dkt. No. 14–1 at 2). This factor is neutral. Only the first factor weighs in Lentini's favor. This is not enough to deny transfer in light of the private-interest factors presumed in favor of defendants and the force of the forum-selection clause. *Atlantic Marine*, 134 S.Ct. at 582-83. It is in the interest of justice that the parties be held to their bargain.

7

### 5. DEFENDANT CUTCO MAY ENFORCE THE FORUM-SELECTION CLAUSE.

Lentini contends that if the forum-selection clause is valid, "it does not govern where Lentini may bring suit against Cutco, because Defendant Cutco is not a party to that Agreement" (Dkt. No. 20 at 13). This argument fails because non-parties to an agreement containing a forum-selection clause can benefit from such a clause in litigation concerning conduct related to the agreement. *See Holland America v. Wartsila North America, Inc.*, 485 F.3d 450 (9th Cir. 2007); *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988).

Plaintiff cites *Manetti-Farrow* in support of his argument against enforcement. There, our court of appeals held that enforcement was valid as to non-signatory defendants because the non-signatories "were involved in some way in ratifying or executing the contract between the signatories." This is not the only condition under which a third party may claim the benefit of a forum-selection clause, however. In *Holland America*, the plaintiff had entered into a contract with the defendant which conducted surveys of plaintiff's cruise ships. After an accident destroyed one of its ships, the plaintiff brought suit against that defendant and two other survey-conducting entities which were separate corporations and not parties to the original contract, but had performed surveys in the United States and Canada. Our court of appeals upheld enforcement of the forum-selection clause in the original contract against both non-signatory defendants "because any transactions between [non-signatory defendants] and [plaintiff] took place as part of the larger contractual relationship between [plaintiff] and [signatory defendant]," also noting that "the record reflects that one of the few things upon which the parties agree is that [plaintiff]'s relationship with [non-signatory defendants] arose out of and was intimately related to its relationship with [signatory defendant]." *Holland America*, 485 F. 3d at 456; *Id.* at n.2.

So too here.

Lentini's employment relationship with Cutco clearly took place as part of the larger contractual relationship between Lentini and Kelly. This is reflected in the very agreement containing the forum-selection clause which states: "I understand I may be offered employment with Kelly Services, Inc., subject to my availability for work, *Kelly's ability to find suitable*

8

*assignments for me*, and results of reference checking or other employment-related screening procedures" (Dkt. No. 14–1, Exh. A) (emphasis added). Moreover, contained in a document on Kelly Services letterhead titled, "Sales Demonstrator Acknowledgment Form for CUTCO STORES Assignments," is the following:

> EMPLOYEE shall be employed as a DEMONSTRATOR by *Kelly Services*. As the employer of record, Kelly is responsible for all tax withholding from your gross wages and CUTCO STORES will retain operational control over your assignments. EMPLOYEE'S duties shall include demonstrating and actively promoting CUTCO STORES products for sale as assigned [] in the various store locations of the third party companies listed on Attachment A [], using promotional images or materials provided by CUTCO STORES.

(Dkt. No. 20–1, Exh. D) (emphasis added). Understandably, Lentini himself understood this document to govern his employment relationship with both Cutco and Kelly (Dkt. No. 20–1 at 4). Lentini now brings claims against Kelly and Cutco, alleging conduct which is directly related to his contractual relationship with both parties. Because Cutco is willing to submit to the forum-selection clause, it is not unreasonable or unjust to enforce the clause even though it did not sign the agreement. *See Holland America*, 485 F. 3d 450. Cutco may therefore benefit from the forum-selection clause contained in Lentini's agreement with Kelly.

Finally, Lentini argues that the agreement containing the forum-selection clause at issue was either terminated or superseded.[2] This argument is unpersuasive. The language in the agreement he relies on merely states that "once 14 days have passed since [his] last day worked, [his] employment with Kelly will be terminated" — it says nothing about the *agreement itself* being terminated (Dk. No. 14–1, Exh. A). Moreover, the time periods in which Lentini claims to have been unemployed contradict what is provided in his first amended complaint.

The forum-selection clause remains valid and enforceable. Therefore, this order transfers the action to the forum preselected by the parties.

---

[2] In his opposition, Lentini claims that on "February 6, [2016]," he signed a new agreement with Kelly that supersedes his 2014 agreement (Dkt. No. 20 at 20). The agreement Lentini points to, however, is a travel expense policy form. It does not purport to override his employment agreement with Kelly.

9

**CONCLUSION**

For the foregoing reasons, the motion to transfer is **GRANTED**. Defendants' motion for a more definite statement is **DENIED AS MOOT**. The clerk shall transfer this action to the United States District Court for the Eastern District of Michigan.

**IT IS SO ORDERED.**

Dated: October 2, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE